UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE INITIAL PUBLIC OFFERING SECURITIES LITIGATION | 21 MC 92 (SAS)<br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER** |
| This document relates to:<br>All Actions | |

# TABLE OF CONTENTS

|   |   |   | Page |
|---|---|---|---|
| I. | STATEMENT OF FACTS | | 1 |
| | A. | Bechtold's Unemployment Claim is Denied | 3 |
| | B. | Bechtold's Appearance at the Fairness Hearing | 4 |
| | C. | Bechtold's Next Attempt to Receive Compensation From Plaintiffs' Counsel | 4 |
| | D. | Bechtold's Actions Are Harmful and Misleading to the Class Members | 5 |
| II. | ARGUMENT | | 8 |
| | A. | The Court Should Preclude Bechtold from Communicating To Class Members Without Prior Court Approval | 8 |
| | B. | The Court Should Preclude Bechtold From Disclosing Attorney Work Product | 12 |
| CONCLUSION | | | 15 |

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*In re Currency Conversion Fee Antitrust Litig.*,
  361 F. Supp. 2d 237 (S.D.N.Y. 2005) ............................................................................9, 11

*Gulf Oil Co. v. Bernard*,
  452 U.S. 89 (1981) .............................................................................................................8, 9

*Hickman v. Taylor*,
  329 U.S. 495 (1947) ..............................................................................................................13

*Rossinni v. Ogilvy & Mather, Inc.*,
  798 F.2d 590 (2d Cir. 1986) ................................................................................................10

*In re School Asbestos Litig.*,
  842 F.2d 671 (3d Cir. 1988) ................................................................................................10

*Tedesco v. Mishkin*,
  629 F. Supp. 1474 (S.D.N.Y. 1986) ....................................................................................10

## DOCKETED CASES

*Theodore A. Bechtold, Esq. v. Stull, Stull & Brody et al*,
  Index. No. 06112866 .........................................................................................................2, 4

## FEDERAL STATUTES

Fed. R.Civ. P. 24 ..............................................................................................................................6

Fed. R.Civ. P. 23(d)(2) .........................................................................................................8, 10, 13

Fed. R.Civ. P. 26(b)(3) .....................................................................................................................13

Milberg Weiss & Bershad LLP ("Milberg Weiss"), court-appointed Chair of the Executive Committee for the IPO Securities Litigation, applies to this Court for a protective order barring Theodore A. Bechtold, Esq. ("Bechtold") from any further actions designed to disseminate class wide communications not previously approved by the Court. As set out in detail below, Bechtold has repeatedly attempted to obtain a cash payment from the IPO Executive Committee while concurrently trying to block the partial proposed settlement in this matter or otherwise disrupt this litigation. Although Bechtold portrays himself to be an advocate for the class, in reality he is a disgruntled former employee of Stull, Stull & Brody ("SS&B"), an Executive Committee firm. Bechtold's true agenda is adverse to the interests of the class. His inaccurate and misleading statements to the class are designed to derail and delay this litigation for his own personal gain and to satisfy his own personal agenda.

I. **STATEMENT OF FACTS**

In January 2001, Bechtold was hired by SS&B. *See* Affirmation of Neil Fraser ("Fraser Aff."), Ex. A at ¶ 3 (Affirmation of Jules Brody In Support of Motion to Dismiss Complaint, Index No. 112866/06, filed Nov. 6, 2006). Prior to his employment with SS&B, and according to his website, Bechtold "resigned as Staff Counsel of the American Stock Exchange in 1997 after experiencing extraordinary dereliction of duty by Exchange regulatory counsel." *See* Fraser Aff., Ex. B (Bechtold's website: www.saveourstockmarket.com/AboutUS.html). He then claims to have played a major role in representing victims of life insurance frauds. In fact, he was hired by a law firm designated to oversee the claims administration in the In re Prudential Life Insurance Marketing Fraud litigation in the District of New Jersey. The prosecution of which was led by Milberg Weiss as lead counsel. His work was certainly not such that would prepare him to hold himself out as an experienced and knowledgeable securities lawyer.

In August 2003, Bechtold was assigned by SS&B to work on the IPO Securities Litigation case. Bechtold, like all of the plaintiffs' attorneys working on the IPO Securities Litigation, is subject to the Stipulated Protective Order. *See* Fraser Aff., Ex. C (Stipulated Protective Order, dated Mar. 18, 2004). While working on the IPO Securities Litigation, Bechtold was exposed to a number of Plaintiffs' litigation strategies, as well as privileged information, including attorney work product. Indeed, Bechtold stresses his experience working on the IPO Securities Litigation case on his website, www.saveourstockmarket.com. As a result of Bechtold's work on the IPO Securities Litigation, he was actively receiving documents and other materials, including trading data, that was produced by the defendants to Plaintiffs' counsel. Now, Bechtold is attempting to use this information to create a financial opportunity for himself while portraying himself as a "white knight" or "whistleblower" to unsuspecting class members.

In fact, Bechtold was eventually fired for cause by SS&B after he improperly contacted the Court with unfounded allegations regarding the manner in which members of the IPO Executive Committee were conducting discovery. Bechtold then applied for unemployment insurance. His application was denied and such denial was twice upheld on appeal. After denial of unemployment insurance, Bechtold intensified his campaign of harassment of the IPO Executive Committee by filing suit in New York State Supreme Court against all the members of the IPO Executive Committee (which case was dismissed after he defaulted)[1] and soliciting

---

[1] On September 12, 2006, Bechtold filed a Complaint in the Supreme Court of the State of New York against the Executive Committee firms and certain attorneys at three firms for, among other things, wrongful termination from SS&B in connection with his work on the IPO Securities Litigation. The Complaint sought $10 million in damages, $250 million in punitive damages and other compensatory relief. The case, *Theodore A. Bechtold, Esq. v. Stull, Stull & Brody et al*, Index. No. 06112866, has since been dismissed.

absent class members and previous objectors to join in his crusade to upset the progress of the IPO securities litigation from which he was released.

Given the background facts, Bechtold's numerous attempts to interfere with the IPO Securities Litigation and/or obtain a monetary payment from the IPO Executive Committee are clearly motivated by his own personal desire for financial compensation and not any other purpose.[2]

Bechtold's campaign began, when on September 29, 2005, Bechtold sent an *ex parte* communication to the Court. In that fifteen page letter, Bechtold disclosed details of Plaintiffs' litigation strategy. This communication was not only unauthorized, but his actions violated the terms of the Court's October 12, 2001 Order which permits only certain attorneys to communicate with the Court. *See* Fraser Aff., Ex. D ([Revised Proposed] Case Management Order, dated Oct. 12, 2001). Bechtold's reckless disregard for the welfare of the class members by divulging privileged information including attorney work product, along with his violation of a standing order of this Court has set the tone for his repeated, ill-conceived attacks on Milberg Weiss and other members of the IPO Executive Committee.

### A. Bechtold's Unemployment Claim is Denied

SS&B terminated Bechtold's employment because "his conduct demonstrated a wanton disregard of the directions of a Federal Judge and of his superiors, and a clear violation of obvious and fundamental ethical standards that forbid *ex parte* communications." *See* Fraser Aff., Ex. A at ¶ 7.

Thereafter, Bechtold began the first of several failed attempts to reap monetary compensation from his justified termination. He first applied to the New York State Department

---

[2] Bechtold filed for bankruptcy protection in October 14, 2005.

of Labor ("DOL") for unemployment insurance benefits. SS&B submitted a letter in opposition to his claim for unemployment insurance. *Id.* at ¶ 8. The DOL issued an initial determination disqualifying Bechtold from receiving benefits effective October 1, 2005 because Bechtold was discharged "for misconduct." *See* Fraser Aff., Ex. E (New York State Department of Labor Notice of Determination To Claimant, dated Feb. 15, 2006). That determination was subsequently upheld by the Unemployment Insurance Appeal Board after a full hearing with testimony. *See* Fraser Aff., Ex. F (Unemployment Insurance Appeal Board Decision of the Board, dated Jan. 22, 2007). Bechtold's termination was found to be justified by two independent finders of fact.

### B. Bechtold's Appearance at the Fairness Hearing

On April 24, 2006, Bechtold appeared at the Fairness Hearing for the Proposed Partial Settlement with the Issuers. While the Court permitted Bechtold to be heard at the hearing as an *amicus,* the Court stressed that Bechtold could not "talk about the experiences [he] learned while he representing [sic] the client, because that would violate the attorney/client privilege and the work product privilege." *See* Fraser Aff., Ex. G at 7, lines 20-22 (Tr. of Settlement Hearing in Robing Room, dated Apr. 24, 2006). As discussed below, Bechtold has most recently been issuing press releases directed at class members which repeatedly contravenes the directive of this Court.

### C. Bechtold's Next Attempt to Receive Compensation From Plaintiffs' Counsel

Realizing that he was likely to lose his unemployment benefits appeal, on September 12, 2006, Bechtold filed the *Theodore A. Bechtold, Esq. v. Stull, Stull & Brody et al*, Index. No. 06112866 action, asserting claims of wrongful termination against not only his employer, SS&B, but also against the entire IPO Executive Committee, including Milberg Weiss. The five page Complaint asked for compensatory damages in the amount of $10,000,000.00 and punitive

damages in the amount of $250,000,000.00. *See* Fraser Aff., Ex. H at ¶ 3 (Affidavit of C. Daniel Chill, dated Oct. 4, 2006).

Each of the IPO Executive Committee firms whom Bechtold actually attempted to serve with the Complaint, submitted Motions to Dismiss. On February 7, 2007, Justice Marilyn Diamond dismissed the case against the IPO Executive Committee firms, except for his employer, SS&B. Thereafter, Justice Diamond dismissed the claims against SS&B because Bechtold failed to appear at a pre-trial hearing. Bechtold did not appeal the decision by the Supreme Court. Accordingly, Bechtold's second attempt to force some type of payment from Milberg Weiss, SS&B or the IPO Executive Committee ended with an independent finder of fact dismissing or defaulting Bechtold on all of his claims.

### D. <u>Bechtold's Actions Are Harmful and Misleading to the Class Members</u>

Finally, unemployed and with no foreseeable income, Bechtold began to solicit potential class members to intervene in this action. In an undated letter that he sent to the Court on or around November 27, 2006, Bechtold notified the Court that he intended to make a motion on behalf of his then unidentified "client" requesting removal of Milberg Weiss as lead counsel of the IPO Securities Litigation. *See* Fraser Aff., Ex. I (Letter to Hon. Shira A. Scheindlin from Theodore A. Bechtold, dated Nov. 27, 2006).

Apparently realizing the local rules require a conference prior to submitting a motion, Bechtold abruptly sent a letter to the Court stating that the November letter was sent in error. *See* Fraser Aff., Ex. J (Letter to Hon. Shira A. Scheindlin from Theodore A. Bechtold, dated December 1, 2006). Thereafter, on December 1, 2006, Bechtold sent a letter to Melvyn I. Weiss

requesting a conference prior to submitting his motion.[3] *See* Fraser Aff., Ex. K (Letter to Melvyn I. Weiss from Theodore A. Bechtold, dated Dec. 1, 2006). On February 16, 2007, Bechtold filed a Motion To Remove Milberg Weiss and Bershad as Lead Counsel in the IPO Securities Litigation.[4] *See* Fraser Aff., Ex. L (Motion to Remove Milberg Weiss & Bershad As lead Counsel in the IPO Securities Litigation, dated Feb. 16, 2007).

On March 27, 2007, Bechtold issued a press release stating that he was "investigating possible violations of duties owed to class members in the IPO Securities Litigation by Milberg Weiss & Bershad and Bernstein Liebhard Lifshitz and other IPO Securities Litigation Executive Committee firms." *See* Fraser Aff., Ex. M (March 27, 2007 Press Release). He "encouraged" people who received materials relating to the IPO Securities Litigation or from Milberg Weiss to contact him "to discuss [their] legal rights." *Id.*

On April 11, 2007, Bechtold issued another press release. The press release stated that "counsel will intervene on behalf of class members to remove Milberg Weiss from the case." *See* Fraser Aff., Ex. P (April 11, 2007 Press Release). The press release, although it contains unfounded allegations against the Milberg Weiss and other member firms of the IPO Executive Committee, clearly refers to privileged attorney work product that Bechtold learned while working on the IPO Securities Litigation while he was employed at SS&B. For example, Bechtold alleges that the IPO Executive Committee firms failed to charge all "culpable parties" including parties "otherwise identified by counsel as participants in the manipulation." *Id.* Any

---

[3] The Court waived the pre-motion conference requirement for Bechtold on December 5, 2006. *See* Fraser Aff., Ex. N.

[4] On March 13, 2007, in light of the Second Circuit Court of Appeals decision that no class can be certified with respect to iXL, the Court stated that Bechtold does not represent a party in the action so his only relief is to make a motion pursuant to Federal Rule of Civil Procedure 24 to intervene in the iXL action on behalf of his client. *See* Fraser Aff., Ex. O.

such allegation, is obviously based on Bechtold's warped understanding of the privileged material he was exposed to while working with the IPO Executive Committee at the direction of the SS&B. Moreover, Bechtold violated this Court's warning that he could not "talk about the experiences you learned while he representing [sic] the client, because that would violate the attorney/client privilege and work product privilege." *See* Fraser Aff., Ex. G at 7, lines 20-22.

On April 19, 2007, Bechtold issued another press release which announced that Bechtold filed a Motion to Intervene on behalf of class members to remove Milberg Weiss from the IPO Securities Litigation. *See* Fraser Aff., Ex. Q (April 19, 2007 Press Release). Furthermore, on April 28, 2007, Bechtold ramped up his attack on Milberg Weiss by issuing a press release that stated that "Class members in *any case* where Milberg Weiss & Bershad serves as lead counsel are encouraged to contact Theodore A. Bechtold, Esq." *See* Fraser Aff., Ex. R (April 28, 2007 Press Release) (emphasis added).

Bechtold's actions amount to harassment of the proposed classes by these press releases in which he styles himself as a champion of the proposed Classes. In reality, Bechtold, a disgruntled former employee of SS&B, is looking for a payday. After filing two separate proceedings (and an appeal from one decision) in which he was not successful, has now focused his attention on interfering with the IPO Securities Litigation case itself. Bechtold is using privileged information that he learned while working on the IPO Securities Litigation in order to benefit himself to the detriment of potential class members, thereby undermining the litigation of this case. His intention is to use unsuspecting objectors to derail this litigation for his own personal gain or vendetta at the expense of millions of class members. His actions breach numerous fiduciary duties he owes to the Classes in this litigation.

Bechtold's press releases are filled with untruths and improper innuendo including attacking a Lead Plaintiff who happens to be a Milberg Weiss client. These accusations, related to certain Trustees of this particular Lead Plaintiff are completely irrelevant to this litigation and are designed to confuse potential class members. Bechtold should not be allowed to issue such class wide communications without prior court approval in hope of securing clients for his own financial gain while severely injuring the classes as a whole.

## II.  ARGUMENT

### A.  The Court Should Preclude Bechtold from Communicating To Class Members Without Prior Court Approval

Lead Plaintiffs seek an order pursuant to Rule 23(d)(2) of the Federal Rules of Civil Procedure precluding Bechtold from directly or indirectly communicating to class members without prior specific written authorization from the Court. Courts have recognized that there is tremendous potential for abuse when an attorney unilaterally communicates with class members, *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981), and that is particularly true here where Bechtold is a former disgruntled employee of one of the members of the IPO Executive Committee who is disclosing attorney work product to the public in an effort to be retained by a settlement class that is represented by the IPO Executive Committee. Because of the potential for abuse, Rule 23(d)(2) of the Federal Rules of Civil Procedure specifically provides the Court with the authority and broad duty to control the conduct of counsel, including to control the notices that counsel provide class members. *Id.* at 100. The Court is responsible for overseeing all forms of notice to the class, including notices regarding "any step in the action ... or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action[.]" Fed.R.Civ.P. 23(d)(2).

Under *Gulf Oil* a Court may preclude all communications by counsel "based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil Co.*, 452 U.S. at 101. Here, these factors weigh heavily in favor of precluding Bechtold from communicating with class members. Bechtold's communications risk confusing and misleading the Issuers settlement class, risk disclosure of attorney work product, violate various ethical rules (including prohibitions against communicating with represented parties and prohibitions on attorneys making deceptive or misleading statements) and are unfair to the conduct of this litigation. *See In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 252-53 (S.D.N.Y. 2005) ("district court's authority under Rule 23(d) is not limited to communications that actually mislead or otherwise threaten to create confusion, but extends to communications that interfere with the proper administration of a class action or those that abuse the rights of members of the class.")

Bechtold's communications are undeniably targeted at the Issuers settlement class. The multiple press releases that Bechtold recently published specifically direct class members to contact him if they wish to discuss the matters within the releases. *See* Fraser Aff., Ex. M (March 27, 2007 Press Release); Ex. O (April 11, 2007 Press Release); Ex. Q (April 19, 2007 Press Release). His communications are undeniably designed to solicit class members to retain him as counsel. *See* Fraser Aff., Ex. S (letter from Bechtold to counsel that was circulated to PIABA attorneys that included his April 11, 2007 press release and stated: "I currently have two clients in the case. I believe the Court will be more likely to take action if I am representing at least one client in each of the 309 offerings in the case. I recovered your names and address from your letter objecting to the settlement...I am seeking Class members willing to intervene in the case..." and further complaining that "[t]hese lawyers are still trying to settle your clients

claim for nothing"). Bechtold's communications to the settlement class members who are represented by the IPO Executive Committee were not approved by the Court nor authorized by the IPO Executive Committee and, therefore, are prohibited under Fed.R.Civ.P. 23(d)(2) and the New York state ethical rules. *See Tedesco v. Mishkin*, 629 F. Supp. 1474 (S.D.N.Y. 1986) (Edelstein, J.) (citing New York DR 7-104 and holding that an attorney may not communicate to a represented party, which includes members of a certified class, without prior authorization from class counsel or the court).[5]

Moreover, taken specifically or generally, Bechtold's communications to the class are misleading, likely to confuse class members, and fail to present a balanced view by any stretch of the imagination and are otherwise unfair to the "conduct of this action." Fed.R.Civ.P. 23(d)(2); *see Rossinni v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 602 (2d Cir. 1986) (improper communications with class members have danger of "'possible chilling of the rights of the potential class members or … seeming to pressure any of them unduly to opt out of the class…or…creating confusion,'" (citations omitted) "'threaten [ ] the essence of fairness and due process' in class actions.") As Courts have recognized, "[m]isleading communications to class members concerning the litigation pose *a serious threat to the fairness of the litigation process, the adequacy of representation and the administration of justice generally.*" *In re School Asbestos Litig.*, 842 F. 2d 671, 680 (3d Cir. 1988) (emphasis added).

---

[5] Indeed, when the Court has considered communications by Bechtold in this case, the Court has specifically precluded their dissemination to defense counsel and admonished Bechtold not to disclose attorney work product. *See* Fraser Aff., Ex. U, Fairness Hearing Tr. Dated May 9, 2006 at 68, lines 16-20 (directing Bechtold at the fairness hearing on the issuer settlement "that he may not reveal either attorney/client communications or attorney work product" in making objections to settlement); Fraser Aff. Ex. T, November 7, 2005 Order (accepting recommendation of Special Master Capra that letter that Bechtold sent to Court not be disclosed to defense counsel after Executive Committee opposed its disclosure based, inter alia, on attorney/client communications and attorney work product contained in letter).

Here, Bechtold is communicating to the class: that he is a former attorney on the case; misleadingly claiming that the IPO Executive Committee is not diligently representing the class; spreading falsehoods about the litigation; and claims that the issuer settlement is inadequate. Bechtold, however, completely fails to advise the class members that the Court appointed a Special Master to investigate Bechtold's allegations and that after careful investigation by the Special Master and review of the Special Master's Report regarding the investigation, the Court concluded that no further investigation was warranted. *See* Fraser Aff., Ex. T (Nov. 7, 2005 Order). Courts have strictly prohibited parties from making such one-sided, misleading and alarmist statements to class members because of the risk that class members will be confused and unable to make informed decisions about their rights as they relate to the action. *See In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 252-254 (S.D.N.Y. 2005); (prohibiting unsupervised communications to class members where critical information was omitted and likely to mislead class members and deprive them of available remedies). Such misleading communications likewise interfere with the fair conduct of the action because the class representatives and their chosen counsel, the IPO Executive Committee, are without proper recourse to address issues already taken up with the Court and resolved. Bechtold's deceptive and misleading statements likewise violate the New York Code of Professional Responsibility, which prohibit attorneys from making deceptive and misleading statements. *See* DR 2-101 (stating that "a lawyer on behalf of himself or herself or partners or associates, shall not sue or disseminate or participate in the preparation or dissemination of any public communication or communication to a prospective client containing statements or claims that are false, deceptive or misleading.").

Finally, as discussed in greater detail *infra*, Bechtold's communications to the class, which he has made public in press releases, are particularly troubling because Bechtold is a former attorney for the class who bases his communications in substantial part on privileged attorney work product. Bechtold's public dissemination of attorney work product is unethical. *See* DR 4-101. It is also unfair to the conduct of this action and detrimental to the class because disclosure of attorney work product undermines the IPO Executive Committee's ability to litigate the case on behalf of the class.

Accordingly, for all of these reasons, the Court should issue an order pursuant to Rule 23(d)(2) prohibiting Bechtold from directly or indirectly communicating to the class without prior specific written authorization from the Court.

### B. The Court Should Preclude Bechtold From Disclosing Attorney Work Product

Lead Plaintiffs seek a blanket order pursuant to Rule 23(d)(2) and Rule 26(c) precluding Bechtold from disclosing attorney work product to any person. This Court previously prohibited Bechtold, a former attorney with an IPO Executive Committee firm and class counsel, from disclosing confidential and protected attorney-work product that he obtained during the course of his work on this case. *See* Fraser Aff., Ex. U (Fairness Hearing Tr. dated April 24, 2006 at 68, lines 16-20 directing Bechtold at the fairness hearing "that he may not reveal either attorney/client communications or attorney work product" in making objections to settlement); *see also* Fraser Aff., Ex. T (November 7, 2005 Order accepting recommendation of Special Master Capra that letter that Bechtold sent to Court not be disclosed to defense counsel after the IPO Executive Committee opposed its disclosure based, *inter alia*, on attorney/client communications and attorney work product contained in letter). The Federal Rules of Civil Procedure support the Court exercising broad authority to prevent the disclosure of attorney

work product, especially when as discussed above, Bechtold is using the information to confuse and mislead the class. *See* Fed. R. Civ. P. 26(b)(3) (stating that "the Court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."); *see also* Fed. R. Civ. P. 23(d)(2); *Hickman v. Taylor*, 329 U.S. 495, 511 (1947) (recognizing that attorney work product "is reflected ... in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways").

Since September 2005, Bechtold has engaged in a pattern of activity that flagrantly disregards his ethical responsibilities to his former clients and his continuing duty to protect the significant attorney work product that he obtained during his over two years working as plaintiffs' counsel in this case. (DR 4-101). His activity also violated the Court's directive to him at the fairness hearing in April 24, 2006. Bechtold previously attempted to disclose protected attorney work when he sent the September 26, 2005 to this Court and he has engaged the purported intervenor clients (all of whom are objectors to the settlement) to whom he will inevitably disclose IPO Executive Committee attorney work product. Indeed, most recently, in soliciting those clients, Bechtold touted his inside knowledge of the case – the only logical implication being that he possesses attorney work product – by stating that as part of his legal career, he spent "two years working exclusively on the IPO Securities Litigation." *See* Fraser Aff., Ex. M (March 27, 2007 Press Release).

In other press releases, Bechtold makes vitriolic attacks on his former clients, IPO Executive Committee members and the IPO Executive Committee's alleged strategic decisions that he would have known only by virtue of his role in the case. For example, in an April 11, 2007 press release, Bechtold stated that the IPO Executive Committee "failed to

charge...Venture capital investors, hedge funds and other clearly culpable parties...even if they were listed in the prospectus as principle shareholders or *otherwise identified by counsel as participants in the manipulation.*" The only means Bechtold has for making such improper allegations and knowing who the IPO Executive Committee identified as "participants in the manipulation" would be through his work on the case. [6] The public statement that those participants have not been "charged" not only comes dangerously close to an attorney work product disclosure, and certainly suggests that Bechtold is disclosing the details of that information to his intervenor clients.

As the Court in *Hickman* recognized, "it is essential that a lawyer work with a certain degree of privacy" and reasoned that if discovery of the material sought were permitted:

> much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

329 U.S. at 510-11.

Here, the impact of Bechtold's efforts to disclose attorney work product is particularly troublesome because of its implications for organized plaintiffs counsel representing thousands of injured persons in class actions such as this one. If attorneys like Bechtold, who are disgruntled and disagree with the strategic decisions of class counsel decide that they want to part ways, the disgruntled attorney would be able to disclose attorney work product into the public domain under the ruse that they are "protecting" the class when that disclosure in fact

---

[6] Bechtold was also privy to information that is subject to the confidentiality order in this case and these statements are likely also based in part on such information. *See* Confidentiality Order dated Mar. 18, 2004.

- 14 -

would likely be harmful to the class. Inevitably, any such disclosure would stifle communication and cooperation among plaintiffs firms organized in complex actions, including this one. Such a result would poorly serve justice and the class. Accordingly, the Court should preclude Bechtold from disclosing any additional work product to the public, defense counsel or purported intervenors.

## CONCLUSION

For the reasons set forth above, Milberg Weiss respectfully requests that its motion for a protective order be granted.

Dated: April 30, 2007  Respectfully submitted,
New York, New York

**MILBERG WEISS & BERSHAD LLP**

By: /s/ Melvyn I. Weiss

Melvyn I. Weiss (MW-1392)
Robert A. Wallner (RW-5109)
Ariana J. Tadler (AT-0452)
Peter Safirstein (PS-6176)
One Pennsylvania Plaza
New York, NY 10119-0165
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

*Chair of the Executive Committee of the IPO Securities Litigation*