# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

**In re INITIAL PUBLIC OFFERING**　　　**OPINION AND ORDER**
**SECURITIES LITIGATION**

　　　　　　　　　　　　　　　　　　**21 MC 92 (SAS)**

-------------------------------------------------------- X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.　INTRODUCTION

Plaintiffs move for an order compelling discovery of certain

memoranda.  Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse")

opposes on the ground that the memoranda are protected as attorney work product.

For the reasons stated below, plaintiffs' motion is granted.

## II.　BACKGROUND[1]

In December 1999, Credit Suisse's general counsel for the Americas

began an internal inquiry into alleged misconduct related to the allocation of

shares during initial public offerings.[2]  To assist in this inquiry, Credit Suisse

---

[1]　　Familiarity with the background of the cases is assumed.  This section presents only those facts relevant to the instant dispute.

[2]　　*See* Plaintiffs' Memorandum of Law in Support of Their Motion for an Order Compelling Discovery Against Credit Suisse Securities (USA) LLC ("Pl. Mem.") at 2; Investigative Testimony of David M. Brodsky, *In the Matter of Credit Suisse First Boston*, No. EAF-000029, at 35-36 (National Association of Securities Dealers Regulation June 14, 2002), Ex. B to Declaration of Christian

1

retained outside counsel, who interviewed Credit Suisse employees regarding their allocation practices and memorialized "factual summaries" of those interviews in memoranda (the "Memoranda").[3]

Credit Suisse produced the Memoranda and other documents to the United States Attorney's Office for the Southern District of New York ("USAO") and to the Securities and Exchange Commission ("SEC") pursuant to letter agreements that contained promises of confidentiality.[4] Plaintiffs allege that after document production began, sixty-eight new memoranda were created and immediately disclosed to the USAO, resulting in a total of 169 memoranda produced to the government.[5]

Disclosure of the contents of the Memoranda was not limited to the USAO and the SEC. In June 2001, Credit Suisse discussed the contents of some

---

Siebott in Support of Motion for an Order Compelling Discovery Against Credit Suisse Securities (USA) LLC.

[3]     *See* Pl. Mem. at 2; Credit Suisse Securities (USA) LLC's Memorandum of Law in Opposition to Plaintiffs' Motion for an Order Compelling Discovery Against Credit Suisse Securities (USA) LLC ("Def. Mem.") at 2.

[4]     *See* 5/11/01 Letter from Carey R. Dunne, Attorney for Credit Suisse, to Steven R. Peikin, USAO, Ex. F to 11/9/07 Letter from Stanley D. Bernstein ("Bernstein Ltr."); 5/24/01 Letter from Lewis J. Liman, Attorney for Credit Suisse, to Wayne Carlin, SEC, Ex. G to Bernstein Ltr.

[5]     *See* Pl. Mem. at 4.

2

of the Memoranda with officers of the National Association of Securities Dealers Regulation, Inc. ("NASDR").[6] In June 2005, Credit Suisse produced the Memoranda to former Credit Suisse employees Michael Grunwald, John Schmidt, and Scott Bushley, who had commenced an arbitration against Credit Suisse for wrongful discharge.[7] Bushley and Schmidt had successfully moved to compel production of the Memoranda,[8] and Credit Suisse then disclosed them to Grunwald.[9] Credit Suisse and Grunwald agreed that the Memoranda would be disclosed pursuant to a "joint stipulation and protective order regarding confidentiality."[10] Credit Suisse informed the arbitrator that it "[did] not object to the order being entered" and that the order was intended to protect its claim of privilege.[11] Plaintiffs now move for disclosure of the Memoranda on the grounds that they are not work product and that even if they are, any privilege has been

---

[6]     See Def. Mem. at 3.

[7]     See Pl. Mem. at 5.

[8]     See id.

[9]     See id. at 6.

[10]     9/16/05 Letter from Jonathan E. Stern, Attorney for Grunwald, and Michael D. Early, attorney for Credit Suisse to Herbert Liberman, Arbitration Administrator, Ex. E to Bernstein Ltr.

[11]     9/13/05 Letter from Michael A. Sherman, Attorney for Grunwald, and Early to Liberman, Ex. E to Bernstein Ltr.

3

waived.[12]

## III.   APPLICABLE LAW

### A.   Legal Standard

The work product doctrine, first articulated by the Supreme Court in

*Hickman v. Taylor*[13] and later codified in the Federal Rules of Civil Procedure,

protects from discovery all documents and materials prepared "in anticipation of

litigation . . . ."[14]

> In performing his various duties . . . it is essential that a
> lawyer work with a certain degree of privacy, free from
> unnecessary intrusion by opposing parties and their
> counsel. . . . This work is reflected, of course, in
> interviews, statements, memoranda, correspondence, briefs,
> mental impressions, personal beliefs, and countless other
> tangible and intangible ways – aptly though roughly termed
> . . . as the "work product of the lawyer." Were such
> materials open to opposing counsel on mere demand, much
> of what is now put down in writing would remain
> unwritten. An attorney's thoughts, heretofore inviolate,

---

[12]    Plaintiffs suggest that Credit Suisse may have waived work product privilege covering documents other than the Memoranda. *See* Pl. Mem. at 24. Because no motion regarding other documents is before the Court, this Opinion does not address plaintiffs' suggestion.

[13]    *See* 329 U.S. 495 (1947).

[14]    Fed. R. Civ. P. 26(b)(3)(A). *See also* Fed. R. Crim. P. 16(b)(2)(A) (exempting from disclosure under Rule 16 "reports, memoranda, or other documents made by the defendant, or the defendant's attorney or agent, during the case's investigation or defense").

4

would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.[15]

The party asserting work product protection bears the burden of establishing all of its elements.[16] To wit, the party generally must show that "the document [sought] 'can fairly be said to have been prepared or obtained *because of* the prospect of litigation.'"[17] This is considered to be a "'heavy burden,'"[18] and cannot be "'discharged by mere conclusory or *ipse dixit* assertions.'"[19]

Work product is divided into two categories: fact work product and

---

[15] *Hickman*, 329 U.S. at 510-11. *Accord United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998) (stating that the work product doctrine "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategies 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries" (quoting *Hickman*, 329 U.S. at 511)).

[16] *See United States v. Construction Prods. Research*, 73 F.3d 464, 473 (2d Cir. 1996).

[17] *Adlman*, 134 F.3d at 1202 (quoting Charles Alan Wright *et al.*, 8 *Federal Practice & Procedure* § 2024 (1994) (emphasis added in *Adlman*)).

[18] *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 184 (2d Cir. 2007) (quoting *In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d 223, 225 (2d Cir. 1984)).

[19] *Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d at 225 (quoting *In re Bonanno*, 344 F.2d 830, 833 (2d Cir. 1965)).

opinion work product. "[F]act work product may encompass factual material, including the result of a factual investigation. In contrast, opinion work product reveals the 'mental impressions, conclusions, opinions, or legal theories of an attorney or other representative,' and is entitled to greater protection than fact work product."[20]

## B. The Limits of Work Product Protection

Unlike the attorney-client privilege, work-product protection is qualified rather than absolute. If the asserting party meets its burden of establishing that the work product doctrine applies, then that protection can be overcome where the party seeking discovery demonstrates its substantial need for the materials, and its inability, without undue hardship, to obtain the substantial equivalent of the materials by other means.[21]

An exception to this qualification exists for "opinion work product," which is typically given absolute protection.[22] "To be entitled to protection for

---

[20]     *Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d at 183 (quoting *Adlman*, 134 F.3d at 1197).

[21]     *See In re Grand Jury Subpoenas Dated Mar. 19, 2002, and Aug. 2, 2002*, 318 F.3d 379, 383 (2d Cir. 2003) (citing Fed. R. Civ. P. 26(b)(3)).

[22]     *See Hickman*, 329 U.S. at 510-13; *Upjohn Co. v. United States*, 449 U.S. 383, 400 (1981); *In re Grand Jury Proceedings (Duffy v. United States)*, 473 F.2d 840, 848 (8th Cir. 1973) (stating that opinion work product is "absolutely,

6

opinion work product, the party asserting the privilege must show 'a real, rather than speculative, concern' that the work product will reveal counsel's thought processes 'in relation to pending or anticipated litigation.'"[23] The Federal Rules codify the special protection afforded opinion work product: "In ordering discovery of such [work product] materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."[24]

## C.  Selective Waiver

### 1.  In re Steinhardt Partners ("*Steinhardt*")

"[V]oluntary disclosure of work product to an adversary waives the privilege as to other parties."[25] However, Credit Suisse asserts that voluntary disclosure in the context of a government investigation where a confidentiality

---

rather than conditionally, privileged").

[23]     *Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d at 183-84 (quoting *Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d at 386).

[24]     Fed. R. Civ. P. 26(b)(3).

[25]     *In re Steinhardt Partners*, 9 F.3d 230, 235 (2d Cir. 1993) (citing *United States v. Nobles*, 422 U.S. 225, 239 (1975); *In re John Doe Corp.*, 675 F.2d 482, 489 (2d Cir. 1982)).

agreement is in place does not amount to waiver of attorney work product privilege. This doctrine is known as "selective waiver."

In *Steinhardt*, the Second Circuit rejected the doctrine of selective waiver as applied to the facts of that case.[26] The Circuit addressed a class action suit against a company and certain individuals accused of market manipulations. The defendants resisted production of a document prepared by their attorneys and previously provided to the SEC in response to its investigation into the conduct underlying the class action.[27]

The Circuit first noted that disclosure to the SEC is different from production compelled by court order.[28] The court further determined that defendants clearly had an adversarial relationship with the SEC:

> The determinative fact in analyzing the adversarial nature of the relationship is that Steinhardt knew that it was the subject of an SEC investigation, and that the memorandum was sought as part of this investigation. The fact that the

---

[26]     *See id.* at 235-36.

[27]     *See id.* at 232.

[28]     *See id.* at 234 ("The declarations submitted by Steinhardt in connection with the motion to compel do not allege that the SEC coerced or required compliance in any way. This case is therefore distinguishable from situations in which disclosure to an adversary is only obtained through compulsory legal process.") (citing *In re Subpoenas Duces Tecum*, 738 F.2d 1367, 1373 (D.C. Cir. 1984)).

request came from the SEC's Enforcement Division further supports the conclusion that this was an adversarial relationship. Even though the SEC's investigation has not resulted in any formal enforcement proceedings against Steinhardt, the presence of an adversarial relationship does not depend on the existence of litigation.[29]

The appellate court concluded that defendants "waived any work product protection by voluntarily submitting the memorandum to the SEC."[30] Although it recognized that the decision might create a risk that corporations would forgo internal investigations or refuse to cooperate with government enforcement actions, the Second Circuit agreed with the D.C. Circuit that "'[w]hen a corporation elects to participate in a voluntary disclosure program like the SEC's, it necessarily decides that the benefits of participation outweigh the benefits of confidentiality.'"[31]

However, the *Steinhardt* court did not completely foreclose the possibility of selective waiver. In *dicta*, the court stated that the question of privilege requires a case-by-case analysis, because

> [e]stablishing a rigid rule would fail to anticipate situations in which the disclosing party and the government may

---

[29]  *Id.*

[30]  *Id.* at 235.

[31]  *Id.* (quoting *In re Subpoenas Duces Tecum*, 738 F.2d at 1372).

9

share a common interest in developing legal theories and analyzing information, or situations in which the SEC and the disclosing party have entered into an explicit agreement that the SEC will maintain the confidentiality of the disclosed materials.[32]

## 2. Decisions Addressing Selective Waiver

Because neither the Supreme Court nor the Second Circuit has expressly upheld a claim of selective waiver, I look to the decisions of other circuits and to courts in this district for guidance.

The doctrine of selective waiver was created in 1977 by the Eighth Circuit in the context of the attorney-client privilege. *Diversified Industries v. Meredith* involved a company's disclosure of certain materials to the SEC, pursuant to a subpoena, that were protected by the attorney-client privilege.[33]  In finding only a selective waiver of the privilege, the court summarily determined that a finding of complete waiver "may have the effect of thwarting the developing procedure of corporations to employ independent outside counsel to investigate and advise them in order to protect stockholders, potential stockholders and

---

[32]    *Id.* at 236.  *See also* notes 49-50, *infra*, discussing cases in this district that reference *Steinhardt*.

[33]    *See* 572 F.2d 596, 611 (8th Cir. 1977) (*en banc*).

10

customers."[34] However, the Eighth Circuit has apparently declined to extend

selective waiver to work product, at least in the context of a selective disclosure to

a non-government adversary. Without discussion of *Diversified Industries*, the

Eighth Circuit found that work product protection was waived where a party made

certain material available to adversaries under a confidentiality agreement.[35]

Since *Diversified Industries*, many courts have grappled with

litigants' attempts to disclose work product and attorney-client communications

without having such disclosures constitute a broad waiver of the privileges. A

number of courts have enunciated significant concerns regarding the utility of

selective waiver. For example, in *Permian Corp. v. United States*, the D.C. Circuit

rejected selective waiver of the attorney-client privilege, holding that "[v]oluntary

cooperation with government investigations may be a laudable activity, but it is

hard to understand how such conduct improves the attorney-client relationship."[36]

---

[34]    *Id.*

[35]    *See In re Chrysler Motors Corp. Overnight Evaluation Program Litig.*, 860 F.2d 844, 845-47 (8th Cir. 1988).

[36]    665 F.2d 1214, 1221 (D.C. Cir. 1981). *Accord In re Subpoenas Duces Tecum*, 738 F.2d at 1372 ("We are convinced that the health of the adversary system – which spawned the need for protection of an attorney's work product from discovery by an opponent – would not be well served by allowing appellants the advantages of selective disclosure to particular adversaries, a differential disclosure often spurred by considerations of self-interest.").

11

The Third Circuit carefully considered selective waiver in

*Westinghouse Electric Corp. v. Republic of the Philippines.*[37] After a review of

recent cases, the court concluded that

> [w]hen a party discloses protected materials to a
> government agency investigating allegations against it, it
> uses those materials to forestall prosecution (if the charges
> are unfounded) or to obtain lenient treatment (in the case
> of well-founded allegations). These objectives, however
> rational, are foreign to the objectives underlying the
> work-product doctrine.[38]

The *Westinghouse Electric* court noted that "the Supreme Court has

been 'especially reluctant to recognize a privilege in an area where it appears that

Congress has considered the competing concerns but has not provided the

privilege itself.'"[39] The court observed that "Congress rejected an amendment to

the Securities and Exchange Act of 1934, proposed by the SEC, that would have

established a selective waiver rule regarding documents disclosed to the agency."[40]

In *United States v. Massachusetts Institute of Technology*, a university

---

[37]     *See* 951 F.2d 1414 (3d Cir. 1991).

[38]     *Id.* at 1429.

[39]     *Id.* (citing *University of Pa. v. EEOC*, 493 U.S. 182, 189 (1990)).

[40]     *Id.* (citing SEC Statement in Support of Proposed § 24(d) of the
Securities and Exchange Act of 1934, in 16 Sec. Reg. & L. Rep. at 461 (Mar. 2,
1984)).

12

supplied the Internal Revenue Service with redacted financial information, claiming

it was covered by both the attorney work product and attorney-client privileges.[41]

However, the university had previously disclosed the redacted information to the

Department of Defense's auditing agency.[42] The First Circuit declined to follow

*Diversified Industries*, finding that

> the general principle that disclosure normally negates the
> privilege is worth maintaining. To maintain it here makes
> the law more predictable and certainly eases its
> administration. Following the Eighth Circuit's approach
> would require, at the very least, a new set of difficult
> line-drawing exercises that would consume time and
> increase uncertainty.[43]

In *In re Columbia/HCA Healthcare Corp. Billing Practices*

*Litigation*, the Sixth Circuit also rejected selective waiver.[44] After citing

*Westinghouse Electric* with approval, the court determined that "preserving the

traditional confines of the rule affords both an ease of judicial administration as

well as a reduction of uncertainty for parties faced with such a decision."[45]

---

[41]    *See* 129 F.3d 681, 683 (1st Cir. 1997).

[42]    *See id.*

[43]    *Id.* at 685.

[44]    *See* 293 F.3d 289, 307 (6th Cir. 2002).

[45]    *Id.*

13

In *In re Qwest Communications International*, following an exhaustive review of precedent, the Tenth Circuit declined to permit selective waiver.[46] The circuit questioned whether selective waiver was necessary to promote cooperation with government investigations, expressed skepticism as to whether the confidentiality agreements that accompanied the company's disclosure had much effect, and determined that "[r]ather than promoting exchange between attorney and client, selective waiver could have the opposite effect of inhibiting such communication."[47]

A number of circuits have not yet addressed selective waiver. However, "[d]istrict court decisions in those Circuits . . . mostly have rejected the selective waiver approach."[48] Within this district, courts have generally attempted to apply the *Steinhardt dicta* regarding the possibility of selective waiver. Some have held that the existence of a confidentiality agreement precludes a finding of waiver.[49] Others have attempted to formulate a balancing test to determine

---

[46]  *See* 450 F.3d 1179, 1192 (10th Cir. 2006).

[47]  *Id.* at 1192-95.

[48]  *In re Natural Gas Commodity Litig.*, No. 03 Civ. 6186, 2005 WL 1457666, at *7 n.6 (S.D.N.Y. June 21, 2005) (citations omitted).

[49]  *See, e.g., In re Cardinal Health, Inc. Sec. Litig.*, No. 04 Civ. 575, 2007 WL 495150 (S.D.N.Y. Jan. 26, 2007); *Maruzen Co. v. HSBC USA, Inc.*, Nos. 00 Civ. 1079, 00 Civ. 1512, 2002 WL 1628782, at *2 (S.D.N.Y. July 23, 2002); *In*

whether selective waiver should be permitted, and have held that the existence of a confidentiality agreement is just one of several factors to be considered.[50]

### 3. The Coercive Effect of Selective Waiver

On first examination, the doctrine of selective waiver might appear to afford companies more options in controlling their work product. With the ability to disclose attorney work product to certain adversaries (such as government enforcement agencies) but not others (such as private litigants), defendants would have more freedom in determining how to best pursue their interests.

But more choice is not always advantageous. Reducing the risk of waiver may concomitantly reduce the ability of defendants to resist demands for disclosure, particularly from government agencies. The result would be a significant increase in the extent to which attorney work product is disclosed to

---

*re Leslie Fay Companies, Inc. Sec. Litig.*, 161 F.R.D. 274 (S.D.N.Y. 1995).

[50] *See, e.g., In re Natural Gas Commodity Litig.*, 2005 WL 1457666, at *8 ("In this Court's view . . . *Steinhardt* does not create a 'per se' rule that if there is a confidentiality/non-waiver agreement with the government, the privilege is not waived.") (finding that no waiver occurred); *Urban Box Office Network, Inc. v. Interfase Managers, L.P.*, No. 01 Civ. 8854, 2004 WL 2375819, at *5 (S.D.N.Y. 2004) (finding that the privilege was waived notwithstanding the existence of a confidentiality agreement). *See also United States v. Wilson*, 493 F. Supp. 2d 348, 362 (E.D.N.Y. 2006) ("What I draw from the *Steinhardt* decision is that a question of selective waiver must be decided on a case-by-case basis, and that the existence of an express non-waiver agreement is a critical element of the analysis.") (finding that no waiver occurred).

15

government agencies. Faced with the possibility or expectation of such disclosure, attorneys performing internal investigations of wrongdoing might be reluctant to memorialize facts that substantiated liability.[51]

For this reason, attorneys representing the business community have generally opposed selective waiver. In 2006, the Advisory Committee on Evidence Rules recommended Proposed Rule 502, which included a provision on selective waiver. The proposed rule read, in relevant part,

> **Selective waiver.** – In a federal or state proceeding, a disclosure of a communication or information covered by the attorney-client privilege or work product protection – when made to a federal public office or agency in the exercise of its regulatory, investigative, or enforcement authority – does not operate as a waiver of the privilege or protection in favor of non-governmental persons or entities.[52]

---

[51]     *See Westinghouse Elec.*, 951 F.2d at 1429-30 ("If internal investigations are undertaken with an eye to later disclosing the results to a government agency, the outside counsel conducting the investigation may hesitate to pursue unfavorable information or legal theories about the corporation. Thus, allowing a party to preserve the doctrine's protection while disclosing work product to a government agency could actually discourage attorneys from fully preparing their cases.").

[52]     Proposed Amendment to the Federal Rules of Evidence, R. 502(c), attached to 5/15/06 Advisory Committee on Evidence Rules, *Report of the Advisory Committee on Evidence Rules*, available at http://www.uscourts.gov/rules/Reports/EV05-2006.pdf ("Advisory Committee Report"). The Committee did not recommend adoption of this provision, instead observing that it "should be placed in brackets to indicate that the Committee has

16

The defense bar was generally opposed to the adoption of this

provision. The Association of Corporate Counsel noted that

> [w]hile it would be nice if we were in a place where it was
> possible for us to imagine a company truly voluntarily
> waiving to the government with the protection of an
> enforceable confidentiality agreement supporting their
> decision to disclose, the reality is that there is no such thing
> as a truly voluntary waiver of privilege in today's highly
> charged prosecutorial environment.[53]

The Federation of Defense and Corporate Counsel expressed similar concerns.[54]

The Corporations Committee of the California State Bar

---

not yet determined whether a provision on selective waiver should be sent to
Congress." Advisory Committee Report, at 3.

[53]    1/9/07 Association of Corporate Counsel (ACC), *Comments of the
Association of Corporate Counsel (ACC) on Proposed FRE 502*, Judicial
Conference of the United States, Standing Committee on Rules of Practice and
Procedure (hereafter Association of Corporate Counsel, *Comments on Proposed
FRE 502*), at 5, attached to 12/28/06 Susan Hacket, *Public Comment 06-EV-045*,
available at 2006 Evidence Rules Comments Chart ("Evidence Comments Chart"),
http://www.uscourts.gov/rules/2006_Evidence_Rules_Comments_Chart.htm. The
ACC suggested that selective waiver might be appropriate where corporations
were "forced to waive already," such as where a government agency has statutory
authority to inspect all corporate documents. *Id.*

[54]    *See* 1/29/07 Federation of Defense & Corporate Counsel ("FDCC"),
*Comments to the Committee on Practice and Procedure of the Judicial
Conference of the United States, Proposed Revisions to Rule 502*, attached to Dan
D. Kohane, President, FDCC, *Public Comment 06-EV-041*, available at Evidence
Comments Chart ("[A] selective waiver approach would encourage waiver and
underscore the protocols which lead to a *forced* sacrifice of protected materials
and communication.") (emphasis in original).

acknowledged these issues, and then raised the danger that "officers and employees [would] lose a key incentive to be candid with corporate counsel, even in situations where an officer or employee has no risk of personal liability but wishes to protect the corporation's interests."[55]  The Commercial and Federal Litigation Section of the New York State Bar Association also expressed concern at the lack of evidence that the proposed rule would promote cooperation with government agencies or reduce the cost of government investigations and prosecutions.[56]

The SEC clearly believes that selective waiver would enhance its ability to gather information from companies under investigation.  In a comment on the proposed rule, the SEC explained that obtaining privileged material has

---

[55]    1/31/07 Corporations Committee, Business Law Section, The State Bar of California, *Selective Waiver of Attorney-Client Privilege and Work Product Protection, Public Comment 06-EV-053*, available at Evidence Comments Chart. *Accord* 1/18/07 International Association of Defense Counsel ("IADC"), *Comments to the Advisory Committee on Evidence Rules of the Judicial Conference of the United States, Proposed Revisions to Rule 502*, attached to 12/6/06 IADC, *Public Comment 06-EV-025*, available at Evidence Comments Chart ("The broad assertion of governmental power codified in the selective waiver provision leaves individuals, corporations and attorneys in the precarious position of being unable to predict in advance whether and to what extent their conversations, advice and work product will be protected.").

[56]    2/15/07 New York State Bar Association, Commercial and Federal Litigation Section, *Federal Rule of Evidence 502, Public Comment 06-EV-069*, available at Evidence Comments Chart.

"saved the Commission months – and in some instances years – of work, as well as enormous amounts of money."[57]  However, the defense bar's argument suggests that the privileged documents that the SEC has obtained in its investigations were useful precisely because the authors of those documents presumed that *no one* would be able to obtain them.  Once it is known that investigators will have access to such documents, due in large part to the selective waiver doctrine, there is a danger that authors will not be as candid in the information they include as they would have been had they thought the information would not be disclosed.  In the end, the information obtained by the investigators will not be as useful as it once was.

### 4.  Circumstances in Which Selective Waiver Should Be Permitted

Based on the cases and arguments discussed above, I conclude that selective waiver is not in the long-term best interests of the government, the adversarial system, or litigants.  In the very short term, parties argue for selective

---

[57]    2/15/07 SEC, *Proposed Rule of Evidence 502, Public Comment 06-EV-062*, available at Evidence Comments Chart.  The Commodity Futures Trading Commission also expressed its approval of the rule for similar reasons.  *See* 2/15/07 United States Commodity Futures Trading Commission, *Proposed Rule of Evidence 502(c), Public Comment 06-EV-064*, available at Evidence Comments Chart ("The proposed rule would serve the public interest by enhancing the Commission's ability to conduct expeditious investigations resulting in more timely enforcement, at a reduced cost to taxpayers as well as witnesses.").

waiver so that they can preserve privilege once disclosure has already occurred (as it has here). In the short term, the government supports selective waiver so that it can easily obtain privileged materials from targets of its investigations. But in the long term, the erosion of the attorney-client and attorney work product privileges through such disclosure will reduce incentives for companies to discover and correct their wrongdoings, thus reducing the value of the information available to the government, and ultimately reducing the bargaining ability of individual defendants, as well as the ability of attorneys to prepare for litigation.

This does not mean that there can never be a case for selective waiver. The Second Circuit has emphasized the factual aspects of waiver issues, and counseled a case-by-case approach to selective waiver.[58] Indeed, a case-by-case approach appears reasonable given the variety of possible situations in which a defendant might disclose information to the government. In the end, however, there is a strong presumption against a finding of selective waiver, and it should not be permitted absent special circumstances.

## IV. DISCUSSION

### A. The Memoranda as Work Product

Plaintiffs contend that the Memoranda are not work product because

---

[58] *See Steinhardt*, 9 F.3d at 236.

they were not prepared in response to the threat of litigation. They note that upon

being subpoenaed by the USAO, Credit Suisse "asked if [the USAO] would

consider withdrawing the subpoena so that [Credit Suisse] could conduct [its] own

internal investigation into these allegations and then report back to [the USAO] on

[its] findings."[59]

            Credit Suisse's willingness to report the findings of the investigation

is not the equivalent of disclosing the contents of the Memoranda themselves.

Plaintiffs assert that "[Credit Suisse] always meant to barter its internal

investigation, interview memos included, in exchange for leniency."[60] On the

contrary, the evidence demonstrates that Credit Suisse perceived the lurking threat

of litigation and sought to forestall that possibility (and limit its liability) by

conducting an internal investigation. While Credit Suisse hoped no litigation

would ensue, there is little doubt that it was preparing for a worst-case scenario.

Without the threat of legal liability, Credit Suisse likely would not have created

the Memoranda. Indeed, an internal Credit Suisse document that discusses the

allocations issues and the internal investigation anticipates the possible

---

[59]     Trial Transcript, *United States v. Quattrone*, No. 03 Cr. 582, at 220 (S.D.N.Y. Oct. 1, 2003), Ex. A to Bernstein Ltr.

[60]     Pl. Mem. at 10.

consequences to include "a spate of private class action lawsuits against [Credit Suisse]" and other legal actions.[61]

Plaintiffs point out that this document also states that Credit Suisse is "anxious to report [its] findings" regarding the internal investigation to regulators "to mitigate any consequences to [Credit Suisse] . . . ."[62] However, contrary to plaintiffs' characterization, a desire to report the findings of an investigation is entirely consistent with an intent to protect the work product prepared by its investigators.

Plaintiffs also argue that because many of the Memoranda were created after Credit Suisse agreed to produce the Memoranda to the USAO, the Memoranda could not have been produced in anticipation of litigation. While this argument is appealing, on close examination it goes to the question of waiver, rather than to the status of the Memoranda as attorney work product. If the internal investigation was initiated with an intent to prepare for litigation, as Credit Suisse has shown that it was, then the agreement to disclose the Memoranda to the USAO would not change the purpose of the investigation

---

[61]    4/8/01 Memorandum from David M. Brodsky to Lukas Muehlemann and Phil Ryan re: IPO Allocations in Tech PCS Group, Ex. B to Bernstein Ltr.

[62]    *Id.*

unless it gave Credit Suisse reason to believe the threat of litigation had been lifted.[63] There is no indication that this is the case. Because the Memoranda were produced primarily for the purpose of preparing for litigation, they are attorney work product. Moreover, based on Credit Suisse's representations regarding the contents of the Memoranda, they are "fact" work product.[64]

## B. Waiver

Credit Suisse asserts that it shared common interests with the USAO and SEC, and as a result, disclosure of the Memoranda to those entities did not waive the work product privilege. This assertion is baseless. As in *Steinhardt*, the SEC and USAO were investigating the possibility of wrongdoing, and Credit Suisse disclosed the Memoranda to escape or limit liability.[65] Credit Suisse contends that the Memoranda were produced to the SEC pursuant to an agreement

---

[63]     If an event occurred in the midst of the investigation that led Credit Suisse to conclude that litigation was highly unlikely, there could be little argument as to whether documents created subsequently would be covered by attorney work product protection. This is not the situation here.

[64]     *See* Def. Mem. at 2 ("The interview memoranda were not intended to be verbatim recitals of the interviewees' statements, but are factual summaries of those statements as memorialized by outside counsel.").

[65]     *See Steinhardt*, 9 F.3d at 234 ("The determinative fact in analyzing the adversarial nature of the relationship is that Steinhardt knew that it was the subject of an SEC investigation, and that the memorandum was sought as part of this investigation.").

that stated the entities had common interests.[66] However, such an agreement

cannot manufacture a common interest *ipse dixit*. Indeed, if the SEC, USAO, and

Credit Suisse had any common interest, it was in the disclosure of the Memoranda

(Credit Suisse to placate the authorities, and the SEC and USAO to further their

investigations). Notwithstanding this common interest, an adversarial relationship

continued to exist among Credit Suisse and the investigative agencies.[67]

          Credit Suisse argues that if its disclosures to the SEC and USAO were

voluntary disclosures to an adversary, they should be considered selective waivers

because they were governed by confidentiality agreements. As discussed above,

selective waiver should not be found simply because of the existence of a

confidentiality agreement.[68]

          Voluntary disclosure of attorney work product, regardless of the

---

[66] *See* Def. Mem. at 18. While the USAO letter did not mention a common interest, Credit Suisse asserts that it "believed that it shared a common interested with" the USAO. Declaration of Paul R. Eckert, Attorney for Credit Suisse ¶ 5.

[67] *But see Cardinal Health*, 2007 WL 495150, at *9 (finding that a "common interest in developing legal theories and analyzing information concerning potential financial irregularities at Cardinal" was sufficient to prevent disclosure from constituting a waiver) (internal quotation marks omitted).

[68] *See supra* note 50 (discussing cases that have considered confidentiality agreements as one element in a balancing test to determine whether to permit selective waiver).

24

existence of a confidentiality agreement, will waive work product privilege absent

special circumstances. What appears to be voluntary disclosure may be, in the

context of a threatened prosecution, closer to a compelled disclosure.[69]

Nonetheless, *Steinhardt* makes clear that such disclosures are considered

voluntary for purposes of a waiver analysis.[70]

Credit Suisse has not shown the existence of any special

circumstances that would justify selective waiver. Therefore, I find that the

privilege was waived by its disclosure of the Memoranda to the USAO and the

SEC. Credit Suisse's repeated voluntary disclosures to adversarial parties threaten

to turn its use of waiver into "merely another brush on an attorney's palette,

utilized and manipulated to gain tactical or strategic advantage."[71] But as

discussed above, such strategic advantage would be short-lived, since attorneys

and clients would change their behavior in response to the likelihood of

"voluntary" disclosure.

Plaintiffs also argue that Credit Suisse's disclosure of the Memoranda

---

[69]     *See* Association of Corporate Counsel, *Comments on Proposed FRE 502*, at 5-6 (discussing the pressure that can be brought to bear on corporations to participate in voluntary disclosure programs).

[70]     *See* 9 F.3d at 234.

[71]     *Id.* at 235.

25

to Grunwald constituted a waiver of the work product privilege. Credit Suisse

responds that this disclosure was not voluntary because it was compelled to

produce the Memoranda pursuant to an order issued by the arbitration panel.[72]

Because I hold that the disclosure to the USAO and SEC constituted a waiver, I

need not address the effect of the disclosure to Grunwald.[73]

"[I]t is essential that a lawyer work with a certain degree of privacy,

free from unnecessary intrusion by opposing parties and their counsel."[74] The

work product privilege encourages thorough legal preparation and planning.[75] If a

---

[72] *See* Def. Mem. at 20.

[73] Plaintiffs further argue that Credit Suisse waived any privilege protecting the Memoranda when it discussed their contents with the NASDR staff. *See* Pl. Mem. at 23. However, Credit Suisse asserts that only a small number of Memoranda were involved in the discussion and only the underlying facts of the Memoranda were disclosed, not their contents. Once again, I need not address these arguments.

[74] *Hickman*, 329 U.S. at 510.

[75] Unfortunately, without clear circuit or Supreme Court law demarcating the waiver doctrine, attorneys cannot predict the likelihood that their work product will be disclosed to adversaries. Attorneys are thus unable to take full advantage of the privilege. *Cf. Jaffee v. Redmond*, 518 U.S. 1, 18 (1996) ("[I]f the purpose of [psychotherapist-patient] privilege is to be served, the participants in the confidential conversation 'must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all.'") (quoting *Upjohn*, 449 U.S. at 393).

26

party could disclose its work product to adversaries, as Credit Suisse has done here, and still maintain its claim of work product protection as to others, "'the outside counsel conducting the investigation may hesitate to pursue unfavorable information or legal theories about the corporation. Thus, allowing a party to preserve the doctrine's protection while disclosing work product to a government agency could actually discourage attorneys from fully preparing their cases.'"[76] This is directly contrary to the purpose of the attorney work product privilege.

Any confidentiality that may have existed between Credit Suisse and its attorneys has been abandoned. Protection of the Memoranda would serve Credit Suisse's strategic purposes, not any societal interest in fostering communications between attorneys and their clients. Parties wishing to take advantage of the privilege that protects attorney work product must zealously maintain the confidentiality of that work product from their adversaries.

## V.   CONCLUSION

For the reasons stated above, plaintiffs' motion is granted. Credit Suisse is instructed to produce the Memoranda to plaintiffs forthwith.

---

[76]     *Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d at 306 (quoting *Westinghouse Elec.*, 951 F.2d at 1429-30). *Accord Hickman*, 329 U.S. at 511 (observing that without work product protection, "much of what is now put down in writing would remain unwritten").

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:   New York, New York
         February 14, 2008

28

## - Appearances -

**For Plaintiffs' Executive Committee:**

Stanley D. Bernstein, Esq.
Bernstein Liebhard & Lifshitz, LLP
10 East 40th Street
New York, New York 10016
(212) 779-1414

**For Defendants Credit Suisse Securities (USA) LLC:**

Fraser L. Hunter, Jr., Esq.
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, New York 10022
(212) 230-8882

**Liaison Counsel for Underwriter Defendants:**

Gandolfo V. DiBlasi, Esq.
Sullivan and Cromwell LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

**Liaison Counsel for Issuer Defendants:**

Jack Auspitz, Esq.
Morrison and Foerster LLP
1290 Avenue of the Americas
New York, New York 10104
(212) 468-8000