**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------ X
                                                    :
**IN RE: INITIAL PUBLIC OFFERING**                  :
**SECURITIES LITIGATION**                           :
                                                    :
                                                    :
                                                    :
                                                    :
                                                    :
------------------------------------------------ X

**AMENDED**
**OPINION AND ORDER**

**MASTER FILE NO. 21 MC 92**
**(SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

On October 5, 2009, this Court granted final approval of a $586
million Stipulation and Agreement of Settlement, providing closure to almost ten
years of litigation involving 309 consolidated actions, fifty-five investment banks,
thousands of individual defendants, and more than seven million potential class
members ("October 5 Opinion and Order").[1]  Out of the seven million potential
class members, less than two ten-thousandths of one percent (0.0002%) –
approximately 140 class members – submitted objections to the proposed
settlement.  This Court considered each in turn, but, nevertheless determined that
the proposed settlement was fair, reasonable, and adequate.

Several objectors appealed that decision, contending that this Court

-----------------------

[1]      *See In re Initial Public Offering ("IPO") Sec. Litig.*, 671 F. Supp. 2d
467 (S.D.N.Y. 2009).

1

made a variety of errors in reaching its conclusion. Those objectors, grouped

according to their counsel, are: (1) three objectors represented by attorney Leland

Greene (the "Greene Objectors");[2] (2) two objectors represented by attorney John

Pentz (the "Pentz Objectors");[3] (3) eight objectors represented by attorney Edward

Siegel (the "Siegel Objectors");[4] (4) two objectors represented by attorneys Robert

Marguiles and Jeffrey Weinstein (the "Weinstein Objectors");[5] (5) forty-two

objectors represented by attorney Theodore Bechtold (the "Bechtold Objectors");[6]

---

[2]     The Greene Objectors are Leslie Baum, Mike Hart, and Sue Shadley.

[3]     The Pentz Objectors are Jackie Pio and David Murray.

[4]     The Siegel Objectors are James Mary, Mark Merrill, Vondell Tyler,
Ernest Browne, Jr., Susan Browne, Richard Paul, Warren Sep, and D&S
Partnership #2.

[5]     The Weinstein Objectors are JKM Company and Steve A. Miller,
individually and as Trustee of the Steve A. Miller P.C. Profit Sharing Plan.

[6]     The Bechtold Objectors are Phyllis Tafuri, Mary Stump, Allen
Morrow, Carl S. Malone, Mary M. Malone, Ray Makiej, Milton Wayne Oschner,
Edwin Fairchild, R.F. Miller Fairchild, Bruce C. Redd, Claudio Naranjo, Robert M.
Mathis, David W. Allen, Jr., John Blast, Volker Brandt, Jeffrey G. Jezak, Stacey
M. Jezak, Lawrence D. Leone, Adam Schwartz, Michael J. MacMurdy, Man Chun
Wai, David Chapman, Norman C. Cherapak, John C. Fox, Warren Lyons,
Christopher R. Rau, Christian McTurk, Maybell H. Garris, Timothy Eldred, Robert
B. Rhenborg, William H. Morgan, Robert Mathis, Michael E. Stewart, Karl H.
Kemp, Jr., Edward S. Tadla, Helen A. Borek, Steven K. Payne, John Kimdl,
Donald K. Franke, Joseph Zazzaretti, Cheryl Zazzaretti, and Larry M. Pollack.

2

and (6) James Hayes, objecting *pro se*[7] (collectively, the "Objectors").  Plaintiffs

argue that the Objectors' appeals are frivolous and request that each Objector

group be compelled to post an appeal bond of $500,000 pursuant to Rule 7 of the

Federal Rules of Appellate Procedure.  Unsurprisingly, the Objectors oppose.[8]  For

the reasons discussed below, plaintiffs' motion is granted.

## II.    APPLICABLE LAW

### A.    Rule 7 Bond

Pursuant to Rule 7, "[i]n a civil case, the district court may require an

appellant to file a bond or provide other security in any form and amount necessary

to ensure payment of costs on appeal."  The purpose of Rule 7 is to protect an

---

[7]    Although Bechtold purports to represent Hayes, Hayes filed a notice
of appeal *pro se* on November 3, 2009.  In addition, Hayes evidently relieved
Bechtold as his counsel on March 30, 2008.  *See* 3/30/08 Letter from Hayes to
Bechtold, Ex. 1 to the Declaration of Christian Siebott, plaintiffs' counsel, in
Support of Motion for Appeal Bonds Pursuant to F.R.A.P. 7 ("Siebott Decl.").
Therefore, for purposes of this motion, Hayes is not considered a member of the
Bechtold Objector group.

[8]    The Objectors were ordered to file a single brief opposing plaintiffs'
motion.  *See In re Initial Public Offering Sec. Litig.*, 21 MC 92, 4/2/10 Hearing
Transcript ("4/2/10 Hr'g Tr.") at 28:11-29:15.  Rather than comply with this
Court's order, the majority of the Objectors filed a single brief, *see* Memorandum
in Opposition to Plaintff's [sic] Motion for Bond ("Objectors Opp."), while the
Bechtold Objectors and Hayes filed separate briefs, *see* Bechtold's Memorandum
in Opposition to Plaintff's [sic] Motion for Bond ("Bechtold Opp."); Hayes's
Objection to Plaintiff's Motion for Appeal Bond ("Hayes Opp.").  While failure to
comply with this Court's order is grounds to reject Bechtold's and Hayes's briefs, I
nevertheless considered them.  They are addressed, where appropriate, herein.

3

appellee against the risk of nonpayment by an unsuccessful appellant.[9]  When deciding whether to require an appellant to post an appeal bond, district courts consider several factors including: "'(1) the appellant's financial ability to post a bond, (2) the risk that the appellant would not pay appellee's costs if the appeal loses, (3) the merits of the appeal, and (4) whether the appellant has shown any bad faith or vexatious conduct.'"[10]

### B.    Costs

"It is within the district court's discretion to determine the amount and nature of the bond."[11]  Fixing the amount of a Rule 7 bond may include taxable costs enumerated in Rule 39(e) of the Federal Rules of Appellate Procedure, such as photocopying, printing, binding, filing, and service as well as the cost of the

---

[9]    *See Adsani v. Miller*, 139 F.3d 67, 70 (2d Cir. 1998).

[10]    *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. 02 Civ. 5575, 2007 WL 2741033, at *2 (S.D.N.Y. Sept. 20, 2007) (quoting *Baker v. Urban Outfitters, Inc.*, No. 01 Civ. 5440, 2006 WL 3635392, at *1 (S.D.N.Y. Dec. 12, 2006) (citing cases)).

[11]    20 Moore's Fed. Prac. § 307.02.  *Accord Adsani*, 139 F.3d at 79 ("A district court, familiar with the contours of the case appealed, has the discretion to impose a bond which reflects its determination of the likely outcome of the appeal."); Fed. R. App. P. 7, Advisory Committee Note, 1979 Amendment ("[T]he question of the need for a bond for costs and its amount [is] in the discretion of the court.").

4

preparation and transmission of the record.[12]  Damages resulting from delay of

settlement administration and attorneys' fees also may be included in a Rule 7

bond if the substantive statute underlying the action includes a fee-shifting

provision that allows such costs to be awarded to the prevailing party.[13]  For

example, the Copyright Act has been found to be a fee-shifting statute that includes

attorneys' fees in its definition of costs.[14]  By comparison, section 4 of the Clayton

Act, which provides for attorneys' fees "only to plaintiffs who prove an antitrust

injury," has been rejected as a statute under which additional costs may be assessed

---

[12]    *See* Fed. R. App. P. 39(e); *see also In re Currency Conversion Fee
Antitrust Litig.*, No. 21 MDL 95, 2010 WL 1253741, at *3 (S.D.N.Y. Mar. 5,
2010).

[13]    *See Adsani*, 139 F.3d at 75 (upholding a district court's inclusion of
attorneys' fees in Rule 7 costs because the statute under which the action had been
brought – the Copyright Act – allows attorneys' fees to be levied as part of the
costs); *see also* 17 U.S.C. § 505 ("the Copyright Act") ("In any civil action under
this title, the court in its discretion may allow the recovery of full costs by or
against any party . . . the court may also *award a reasonable attorney's fees to the
prevailing party as part of the costs*") (emphasis added); *In re Air Cargo Shipping
Servs. Antitrust Litig.*, No. 06 MDL 1775, 2010 WL 1049269, at *2 (E.D.N.Y.
Mar. 22, 2010) (noting that damages resulting from delay or disruption of
settlement administration caused by frivolous or vexatious appeals may be
appropriate where the relevant underlying statute provides for awarding costs
incident to delay on appeal).

[14]    *See Adsani*, 139 F.3d at 75.

5

for a Rule 7 bond.[15]

## III.  DISCUSSION

### A.  Rule 7 Bond

*First*, the Objectors have not presented any evidence demonstrating that they lack the financial ability to post a bond.  Accordingly, the Objectors' ability to do so is presumed.[16]

*Second,* the Objectors are dispersed around the country and none has offered to guarantee payment of costs that might be assessed against them.  In the event the Objectors are unsuccessful on appeal, plaintiffs would need to institute collection actions in numerous jurisdictions to recover their costs.  As a result, there is a significant risk of non-payment.[17]

---

[15]     *Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 959 (9th Cir. 2007) (quotation marks omitted).

[16]     *See Adsani*, 139 F.3d at 79 ("[W]e find that without any showing of her financial hardship, the bond imposed on Adsani is not an impermissible barrier to appeal . . . ."); *In re AOL Time Warner*, 2007 WL 2741033, at *2 (concluding that the appellant was not arguing that it lacked the financial ability to post a bond where it did not submit financial information); *Baker*, 2006 WL 3635392, at *1 (same).

[17]     *See In re Currency Conversion Fee Antitrust Litig.*, 2010 WL 1253741, at *2 (finding a significant risk of non-payment where appellants were dispersed around the country, class counsel would need to institute numerous collection actions to recover their costs, and no appellant offered to guarantee payment of the costs that might be assessed against them).

*Third*, the Objectors contend as an initial matter that it is not for the district court to decide whether an appeal has merit.[18]  However, in upholding a district court's order for a Rule 7 bond, the Second Circuit unequivocally rejected the argument that a district court may not forecast the merits of the appeal.[19]

Having considered the Objectors' arguments on appeal, I predict that the October 5 Opinion and Order will be affirmed.  Class action settlements are reviewed on appeal for abuse of discretion[20] and there is nothing to suggest that this Court will be reversed on appellate review.  While the Objectors' claims are not entirely without merit,[21] I do not believe the Objectors will be successful in overturning this Court's October 5 Opinion and Order.

---

[18]     *See* Objectors Opp. at 3-5.

[19]     *See Adsani*, 139 F.3d at 79 ("As for Adsani's argument that the district court is prejudging the case's chances on appeal:  not only is such prejudging part and parcel of Rule 7, but this argument falls with the financial hardship argument. The only way that an appellant would have to pay any 'costs' would be if he or she lost on appeal:  therefore, a district court's imposition of any sort of cost bond (whether or not including attorney's fees) can always be described as an implicit finding that the appellant's appeal lacks merit, or at least that the appellant poses a payment risk.  A district court, familiar with the contours of the case appealed, has the discretion to impose a bond which reflects its determination of the likely outcome of the appeal.").

[20]     *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001); *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 47-48 (2d Cir. 2000).

[21]     *See* Objectors Opp. at 8-12; Bechtold Opp. at 3-5; Hayes Opp. at 2-3.

*Finally*, there is evidence of bad faith or vexatious conduct by the

Objectors. Other courts have found that counsel for the Pentz, Siegel, and

Weinstein Objectors are serial objectors and have required them to post bonds in

other actions.[22] Not only is Bechtold also a serial objector,[23] he holds personal,

documented, animus toward the IPO Executive Committee.[24]

Similarly, Hayes has objected in at least six class action settlements.[25]

Hayes acknowledges that he objected in each of these six cases, but provides that

he prosecuted three of them through the appeal and filed a petition for a writ of

---

[22]    *See, e.g., In re Wal-Mart Wage & Hour Employment Practices Litig.,*
No. 06 Civ. 225, 2010 WL 786513, at *1 (D. Nev. Mar. 8, 2010) (ordering
objectors Pentz and Siegel who appealed the final approval of a class action
settlement to post a Rule 7 bond); *Turner v. General Elec. Co.,* No. 06 Civ. 186,
Slip Op. at 2 (M.D. Fla. Oct. 12, 2006) (ordering objector to post a bond after his
counsel, Weinstein, "stated that he would withdraw his objection if Class Counsel
made a donation to a charity he selected").

[23]    *See* Bechtold Opp. at 5-10 (listing at least six other actions in which
he has objected).

[24]    *See In re Initial Public Offering Sec. Litig.,* 499 F. Supp. 2d 415, 421
(S.D.N.Y. 2007) (denying a motion by Bechtold to remove the IPO Executive
Committee and other firms as lead counsel, noting Bechtold's "history of personal
animus against the IPO Executive Committee firms, his conduct in this litigation,
including the *ex parte* letter to the Court, and the various press releases he has
issued relating to this litigation and to Milberg Weiss").

[25]    *See* Memorandum of Law in Support of Motion for Appeal Bonds
Pursuant to F.R.A.P. 7 ("Pl. Mem.") at 15 n.14.

certiorari in the Supreme Court.[26]  In an unrelated action, Hayes created a nonprofit

organization and entered into a stipulation pursuant to which he withdrew his

objection to a $3.2 billion class settlement in exchange for a $300,000 donation to

his organization, plus an additional $40,000 payment to himself and his then-

counsel.[27]  Hayes does not deny that he has received a donation in exchange for

withdrawing a motion for reconsideration and agreeing not to appeal, but quarrels

with the circumstances under which the agreement was reached.[28]  Hayes also

admits that he has been ordered to post a bond in a different action and notes that

he is a class member in three other, currently pending, actions.[29]  Hayes's version

of the facts does not diminish this Court's conclusion that he is a serial objector

and should also be required to post a Rule 7 bond.  While it does not appear that

Greene is a serial objector, prior counsel for the Greene Objectors sought to extort

an exorbitant fee from Class Counsel in exchange for withdrawing their appeal.[30]

       Lending further support to the conclusion that, at least, Greene,

---

[26]    *See* Hayes Opp. at 1.

[27]    *See* Notice of Stipulation Regarding James J. Hayes' Withdrawal of Motion for Reconsideration and Agreement Not to Appeal, *In re Tyco Int'l Ltd., Sec. Litig.*, No. 02 MDL 1335 (D.N.H. Mar. 11, 2008), Ex. 3 to Siebott Decl.

[28]    *See* Hayes Opp. at 1-2.

[29]    *See id.* at 1, 3.

[30]    *See* 4/2/10 Hr'g Tr. at 21:18-25:9.

Siegel, Pentz, and Weinstein are appealing the October 5 Opinion and Order in bad

faith is their outright refusal to comply with this Court's Orders. In connection

with plaintiffs' motion, this Court ordered the Objectors' attorneys – over their

objection – to provide responses to four specific questions.[31]  These questions

sought to determine if any of the Objectors' counsel have a pattern or practice of

objecting to class action settlements for the purpose of securing a settlement from

class counsel.[32]  Only Bechtold and Hayes responded.[33]  Greene, Siegel, Pentz, and

Weinstein argued that the requests are "not proper" and "did not merit a

response."[34]  Such conduct is sanctionable under Rule 37 of the Federal Rules of

Civil Procedure.[35]  Therefore, an adverse inference may be drawn against the

Greene, Siegel, Pentz, and Weinstein Objector groups.[36]  I note, however, that there

is sufficient evidence to conclude that the Siegel, Pentz, and Weinstein Objectors

groups are represented by serial objectors and that all four Objector groups have

---

[31]    See id. at 18:6-17, 20:1-11.

[32]    See id. at 20:5-21:14.

[33]    See Bechtold Opp. at 5-10; Hayes Opp. at 3.

[34]    Objectors Opp. at 6.

[35]    See Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002).

[36]    See Fed. R. Civ. P. 37(b)(2)(A)(i).

engaged in bad faith and vexatious conduct even without drawing a negative inference.

        Based on the factors considered above, a Rule 7 bond is warranted.  I concur with the numerous courts that have recognized that professional objectors undermine the administration of justice by disrupting settlement in the hopes of extorting a greater share of the settlement for themselves and their clients.[37]  Thus, the Objectors are required to file an appeal bond sufficient to secure payment of costs on appeal.

### B.    Costs Covered by the Appeal Bond

        Plaintiffs argue that the appeal bond should include (1) the taxable costs specified by Rule 39(e), (2) the cost of delay and disruption of the settlement administration, and (3) attorneys' fees that plaintiffs will incur on appeal.  With regard to taxable costs, plaintiffs rightfully assert that the appeal will entail

---

        [37]    *See, e.g.*, *Barnes v. FleetBoston*, No. 01 Civ. 10395, 2006 U.S. Dist. LEXIS 71072, at *3 (D. Mass. Aug. 22, 2006) ("Repeat objectors to class action settlements can make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements. The larger the settlement, the more cost-effective it is to pay the objectors rather than suffer the delay of waiting for an appeal to be resolved (even an expedited appeal)."); *O'Keefe v. Mercedes-Benz United States, LLC*, 214 F.R.D. 266, 295 n.26 (E.D. Pa. 2003) ("Federal courts are increasingly weary of professional objectors:  some of the objections were obviously canned objections filed by professional objectors who seek out class actions to simply extract a fee by lodging generic, unhelpful protests.") (citation omitted).

significant costs, including copying costs for briefs and compilation of the

voluminous record. The appendix would necessarily include the several thousand

pages included in the expert reports and exhibits. Taxed at the Second Circuit rate

of $0.20 per page, plaintiffs assert that copying costs will amount to at least tens of

thousands of dollars. I conclude that $25,000 is likely sufficient to cover these

taxable costs.[38]

Costs for delay and attorneys' fees, on the other hand, are not

appropriate. Plaintiffs cite Section 11(e) of the Securities Act of 1933 – one statute

underlying these cases – as a fee-shifting statute that would permit costs outside

the scope of Rule 39(e). Section 11(e) provides that where a judgment is "rendered

against a party litigant" on a suit under the Act,

> the court may, in its discretion, . . . upon the motion of the
> other party litigant [award the latter] the costs of such suit,
> including reasonable attorney's fees . . . if the court
> believes the suit or the defense to have been without merit,
> in an amount sufficient to reimburse him for the reasonable
> expenses incurred by him, in connection with such suit,
> such costs to be taxed in the manner usually provided for
> taxing of costs in the court in which the suit was heard.[39]

"This section was designed to provide a deterrent against blackmail suits and

---

[38]    *Cf. In re Currency Conversion Fee Antitrust Litig.*, 2010 WL
1253741, at *3 (requiring a bond in the amount of $50,000 to cover taxable costs
of the appeal).

[39]    15 U.S.C. § 77k(e).

against baseless defenses to meritorious claims."[40]

Aside from the fact that section 11(e) does not provide for delay costs, section 11(e) does not apply here because the Objectors are not bringing a "suit" under this statute. They are objecting to this Court's decision to grant final approval of a settlement for the class. In addition, unlike the Copyright Act, section 11(e) is not a fee-shifting statute. Rather, section 11(e) permits a court to order sanctions where a litigant brings a suit or raises a defense that is frivolous. It does not fall within the scope of those fee-shifting statutes contemplated by the Second Circuit for purposes of assessing costs for a Rule 7 bond.[41] Accordingly, neither delay costs nor attorneys' fees are appropriate.

Plaintiffs contend that delay costs and attorneys' fees should be included in the Rule 7 bond even if section 11(e) is excluded from this Court's consideration. With regard to delay costs, plaintiffs cite *In re NASDAQ Market-Makers Antitrust Litigation* for the proposition that delay costs can be included in a

---

[40]     *Healey v. Chelsea Res., Ltd.*, 947 F.2d 611, 624 (2d Cir. 1991) (citing 78 Cong. Rec. 8669 (May 12, 1934) (explanatory memorandum of Senator Fletcher, sponsor of proposed section 11(e))).

[41]     *Cf.* 17 U.S.C. § 505 ("the Copyright Act") ("In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party . . . the court may also *award a reasonable attorney's fees to the prevailing party as part of the costs*") (emphasis added); *Adsani*, 139 F.3d at 75 (finding the Copyright Act a fee-shifting statute for purposes of a Rule 7 bond).

13

Rule 7 bond even in the absence of an applicable statute.[42]  *In re NASDAQ* appears

to be the only case in this circuit that supports plaintiffs' position and its reasoning

may be flawed.[43]  The court in *In re NASDAQ* permitted a Rule 7 bond to include

damages stemming from delay under the rationale used to justify *supersedeas*

*bonds* under *Rule 8* of the Federal Rules of Appellate Procedure.[44]  As noted by

other courts, the rationale underlying Rule 7 bonds is distinct from the rationale

underlying Rule 8 bonds, which "serve a different purpose and are governed by a

separate Federal Rule of Appellate Procedure."[45]  Indeed, the Second Circuit has

expressly cautioned that a Rule 7 bond and a Rule 8 bond "should not be

confused."[46]  I concur with those courts that have concluded that damages for delay

---

[42]      *See* Pl. Mem. at 8-9 (citing *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 124, 128 (S.D.N.Y. 1999)).

[43]      *Cf. In re Air Cargo*, 2010 WL 1049269, at *2 (holding delay damages cannot be included in an appeal bond because the underlying statute did not provide for the inclusion of such costs); *In re AOL Time Warner*, 2007 WL 2741033, at *4 (same).

[44]      *See In re NASDAQ*, 187 F.R.D. at 128 ("An appeal bond provides a 'guarantee that the appellee can recover from the appellant the damages caused by the delay incident to the appeal.'") (quoting *Morgan Guaranty Trust Co. of N.Y. v. Republic of Palau*, 702 F. Supp. 60, 65 (S.D.N.Y. 1988) (considering a *Rule 8* bond and applying this rationale), *vacated on other grounds*, 924 F.2d 1237 (2d Cir. 1991)).

[45]      *See In re AOL Time Warner,* 2007 WL 2741033, at *4 n.4.

[46]      *Adsani*, 139 F.3d at 70 n.2 (noting that "a supersedeas bond is *retrospective* covering sums related to the merits of the underlying judgment (and

14

cannot be included in Rule 7 bonds where no underlying statute provides for the inclusion of such costs. Thus, there are no grounds for awarding delay costs here.

Plaintiffs also assert that attorneys' fees can be separately justified under Rule 38 of the Federal Rules of Appellate Procedure.[47] Rule 38 provides that "[i]f a *court of appeals* determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee."[48] As recognized by a number of other courts, to include attorneys' fees in the costs for a Rule 7 bond "would infringe on the authority that the Rule explicitly grants to the Court of Appeals."[49] Accordingly, including attorneys' fees in this Rule 7 bond would be improper.

Without delay costs and attorneys' fees, the Objectors are required to post a Rule 7 bond for taxable costs of $25,000. I conclude that such a bond is

---

stay of its execution), whereas a cost bond is *prospective* relating to the potential expenses of litigating an appeal") (emphasis added) (citations and quotation marks omitted). *Accord In re AOL Time Warner*, 2007 WL 2741033, at *4 n.4 (refusing to "apply Rule 8 jurisprudence in the Appellate Rule 7 context" in light of the Second Circuit's "explicit [ ] distinction between supersedeas and appeal bonds").

[47]     *See* Pl. Mem. at 10-11.

[48]     Fed. R. App. P. 38 (emphasis added).

[49]     *In re AOL Time Warner*, 2007 WL 2741033, at *5.

reasonable and sufficient to protect plaintiffs for their costs on appeal.[50]  Plaintiffs

requested that each Objector group separately be required to post the full bond

amount, but have provided no basis for doing so.  Therefore, the request is denied.

## IV.   CONCLUSION

For the foregoing reasons, plaintiffs' motion for a Rule 7 bond is

granted.  The Objectors are ordered to post a $25,000 bond for which all Objectors

are jointly and severally liable.  The Clerk of the Court is directed to close this

motion (Docket No. 6199 in action 21 MC 92).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      July 19, 2009
            New York, New York

---

[50]      *Cf. In re Wal-Mart*, 2010 WL 786513, at *2 (ordering each objector to
post $500,000 bond involving a $65-$85 million settlement, representing between
0.58% and 0.77% of the total settlement proceeds).

16

**- Appearances -**

## For Plaintiffs' Executive Committee:

Stanley D. Bernstein, Esq.
Rebecca M. Katz, Esq.
Christian Siebott, Esq.
Bernstein Liebhard LLP
10 East 40th Street
New York, New York 10016
(212) 779-1414

Robert A. Wallner, Esq.
Ariana J. Tadler, Esq.
Peter G.A. Safirstein, Esq.
Neil Fraser, Esq.
Milberg LLP
One Pennsylvania Plaza
New York, New York 10119
(212) 946-9453

David Kessler, Esq.
Barroway Topaz Kessler Meltzer &
Check LLP
280 King of Prussia Road
Radnor, Pennsylvania 19087
(610) 667-7706

Jules Brody, Esq.
Stull, Stull & Brody LLP
6 East 45th Street
New York, New York 10017
(212) 687-7230

Howard B. Sirota, Esq.
Sirota & Sirota LLP
260 Madison Avenue
New York, New York 10016
(212) 425-9055

Fred Taylor Isquith, Esq.
Thomas H. Burt, Esq.
Wolf Haldenstein Adler Freeman & Herz
LLP
270 Madison Avenue
New York, New York 10016
(212) 545-4600

17

**Liaison Counsel for Underwriter Defendants:**

Gandolfo V. DiBlasi, Esq.
Penny Shane, Esq.
David M.J. Rein, Esq.
Richard J.L. Lamuscio, Esq.
Sullivan and Cromwell LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

**Liaison Counsel for Issuer Defendants:**

Jack C. Auspitz, Esq.
Joel C. Haims, Esq.
Hilary M. Williams, Esq.
Angela T. Rella, Esq.
Reema S. Abdelhamid, Esq.
Morrison and Foerster LLP
1290 Avenue of the Americas
New York, New York 10104
(212) 468-8000

**For the Greene Objectors:**

Leland L. Greene, Esq.
600 Old Country Road
Suite 229
Garden City, New York 11530
(516) 746-3800

**For the Siegel Objectors:**

Edward F. Siegel, Esq.
27600 Chagrin Blvd. #340
Cleveland, Ohio 44122
(216) 831-3424

**For the Pentz Objectors:**

John J. Pentz, Esq.
Class Action Fairness Group
2 Clock Tower Place, Suite 260G
Maynard, Massachusetts 01754
(978) 461-1548

**For the Weinstein Objectors:**

Jeffrey L. Weinstein, Esq.
The Weinstein Law Firm
518 East Tyler Street
Athens, Texas 75751
(903) 677-5333

**For the Bechtold Objectors:**

Theodore A. Bechtold, Esq.
310 94th Street, #319
Brooklyn, New York 11209
(570) 618-1610

**James J. Hayes (Pro Se)**
4024 Eastbrook Dr.
Annandale, Virgnia 22003

19